(13 Misc. Rep. 532.)

FINN v. LALLY et al.

(Supreme Court, Special Term, New York County. July, 1895.)

MORTGAGES—REDEMPTION—MORTGAGEE IN POSSESSION.

 In an action to redeem land on the ground that the foreclosure proceedings were void, it appeared that, at the foreclosure sale 20 years before, the mortgagee became the purchaser and by mesne conveyances had conveyed the land to defendants who were in possession when the action to redeem was brought. Defendants' grantors built houses on the land, and occupied them, as also did defendants. They also expended money for taxes, repairs, and insurance, and one of them borrowed money on the land, and used it in erecting a building thereon. *Held*, that defendants were not mortgagees in possession, but were occupants of the land under a claim of title.

 Action by Mary Finn against James J. Lally and others to redeem land from a mortgage. Complaint dismissed.

 Fordham Morris and C. E. Sentell, for plaintiff.
 Theodore H. Friend and Jas. R. Marvin, for defendants.

 LAWRENCE, J. This action is brought to redeem the northerly half of lot 31, the whole lot being 100 feet by 100, on the map of the village of Mount Hope, now in the Twenty-Fourth ward of the city of New York, from a mortgage given upon the whole lot, dated October 22, 1852, made by Andrew Stewart to John Weeks to secure $150 and interest thereon. An action was brought in 1869 by Weeks, the mortgagee, to foreclose this mortgage, which resulted in a judgment of foreclosure, under which the mortgaged premises were sold and conveyed by the sheriff of Westchester to the mortgagee, John Weeks, who received the sheriff's deed, dated December 11, 1869, and duly recorded on January 14, 1870. Andrew Stewart, the mortgagor, is the common source of title, and the plaintiff claims to be a grantee under him, through mesne conveyances of the mortgaged premises, subject to the mortgage, and alleges in her complaint that the action to foreclose the mortgage, and the decree rendered therein, and the sale and sheriff's deed had and given thereunder, were null and void; and she asks the court to permit her to redeem the northerly half of said lot 31 upon payment of what, if anything, shall be found due to the defendants, and that upon such payment the defendants deliver up possession of the mortgaged premises, and execute a proper satisfaction of said mortgage, or such other instruments as may be necessary to reinvest the title of said northerly half of said mortgaged premises in the plaintiff.

 The plaintiff claims that the action brought by Weeks for the foreclosure of the mortgage aforesaid was commenced under an order for the publication of the summons, which order was obtained on the 14th of June, 1869, and recited that it appeared by the affidavit of Caleb Purdy that the residence of said Andrew Stewart was unknown, and, after due diligence, could not be found. The affidavit of Purdy states that "the residence of the defendant, Andrew Stewart, is unknown to this deponent, nor can the same, after reasonable

diligence, be ascertained by him, this deponent." It is claimed that this order is a nullity, and conferred no jurisdiction upon the court.

It appears that, prior to the foreclosure suit, Stewart had conveyed to one Christina Ritter, wife of Robert Ritter, on October 25, 1856. This deed was not recorded until January 18, 1893. On the 13th of January, 1857, Christina Ritter conveyed the premises in question, subject to the mortgage to Weeks, to Robert H. Cousins, which deed was recorded on the 13th of January, 1857. It also appears that judgment was rendered against Cousins, in the marine court of the city of New York, in favor of one Sanders, and that a transcript thereof was afterwards filed in the county clerk's office of New York and Westchester counties, and that on the 7th of September, 1857, the sheriff of Westchester county sold the premises to satisfy said judgment, and that they were bought at said sale by Henry P. Townsend, who thereupon received a deed from said sheriff therefor, which was not, however, recorded until January 18, 1893. On November 2, 1892, Henry P. Townsend conveyed the whole of said premises to the plaintiff by deed dated on that day, and recorded on January 18, 1893. The plaintiff also obtained a quitclaim deed of the whole of said premises from the widow and heirs of said Robert H. Cousins, which deed is not recorded, but which was offered in evidence upon the trial. It appears that the plaintiff, in 1892, sold the premises conveyed to her by Townsend to one Robert J. Koempel, at public auction. The title was searched for the purchaser by the Title Guarantee & Trust Company, who raised objections thereto on account of the alleged defective foreclosure suit, and to the outstanding title commencing with Ritter, and ending with Henry P. Townsend. Subsequently the old, unrecorded deed from Stewart to Ritter, before mentioned, was discovered.

Even if the objections to the order under which publication of the summons was directed, as against Andrew Stewart, are well taken, it does not seem to me, upon the evidence in this case, that the plaintiff is entitled to judgment. It is objected upon the part of the defendants that the plaintiff's deed from Henry P. Townsend, under which she claims title to the northerly half of said lot 31, is, as to that half, champertous and void, and for that reason she cannot maintain the present action. The Revised Statutes (1 Rev. St. 739, § 147) provide that "every grant of lands shall be absolutely void if at the time of the delivery thereof such lands shall be in the actual possession of a person claiming under a title adverse to that of the grantor." See, also, 1 Birdseye's St. 825, § 12. I think that the evidence establishes that the defendants Lally and Connell were actually in possession of their lots—such lots constituting the premises in question—at the time of the delivery of the plaintiff's deed, claiming under a title adverse to that of the plaintiff's grantor, Townsend. John Finn, the husband and agent of the plaintiff, testifies that he called on both the defendants Lally and Connell in the fall of 1892, just previous to the date of plaintiff's deed, to induce them, as the owners of their respective lots, to join him in defraying the expense of securing such deed from Townsend. On that occasion the defendants were in the dwelling houses upon

their respective lots, and in possession of the same, which was evidence to him of the adverse claim and holding of the defendants. It is quite apparent that the object of Finn was to clear up the title of his wife to the other half of the premises; and his conduct certainly shows that he at that time knew what the defendants' claim was to the other (northerly) half of the lots. See, also, letters written by the counsel of the plaintiff to the defendants in respect to the northerly half of the lots.

It appeared also from the evidence of Finn that he saw the construction of the houses erected by Lally and Barnecot (the defendant Connell's grantor) going on a long time before his interview with them in respect to clearing up the title. The erection of the houses was a visible and notorious act in direct hostility to a claim of title of any other person. The deed from Delany to Barnecot is dated August 6, 1874. He erected his house and inclosed his lot immediately, or almost immediately, after the date of the deed. This, it seems to me, was a clear and direct assertion of adverse title and possession. Barnecot also lived in the house continuously, and paid the taxes, and expended various sums for repairs and insurance, up to December, 1891, when he made a conveyance to the defendant Connell, who thereupon entered into possession under his deed, and ever since has been, and still is, living upon the lot so conveyed to him. He also executed a mortgage for $1,400 to Thomas E. Thorn, which bears date October 26, 1874, and was recorded November 6, 1874, in New York county. This mortgage is still a lien upon the lot, and is overdue and unpaid. The money secured by the mortgage was used to construct the dwelling house, and the mortgagee, Thorn, is not a party to this action. Lally's title also comes from Delany, who purchased from Weeks, and took a full covenant warranty deed, dated October 9, 1871, and recorded October 12, 1871, in Westchester county. Delany conveyed to Barnecot the one-half of the northerly half of said lot 31, as before stated; and on January 2, 1884, he conveyed the other half of the northerly half of said lot 31 to Lally. That deed was duly recorded on the 3d of May, 1884, in New York county. Lally subsequently executed two mortgages to the defendant Camilla T. Archer. Said mortgages, being dated, respectively, February 13, 1886, and February 28, 1893, were duly recorded immediately after their execution and delivery. Lally has also lived in his house continuously since the same was built by him, in 1884, and he has fenced and inclosed his lot. Michael Delany, to whom Weeks conveyed, is not only the grantor under whom the defendants claim their title, but in 1872 he conveyed to John Finn, the husband of the plaintiff, who was a witness upon the trial, the southerly half of lot 31. Finn conveyed to his wife, Mary Finn, the southerly half of the premises, before she received her deed from Townsend.

On this state of facts, I do not think it can be said that the defendants Lally and Connell were mortgagees in possession. Their title, as above stated, comes from Weeks, who entered under the judgment of foreclosure and sheriff's deed dated December 11, 1869, and recorded January 14, 1870. Whether the proceedings under

the foreclosure suit were invalid or not, Weeks entered under a claim that they were valid, and that the judgment was binding upon Stewart, the common source of title, and he or his grantees have occupied the premises under that claim for more than 20 years prior to the commencement of this action. See Code Civ. Proc. §§ 365, 369.

Upon the whole case, I do not think that the plaintiff has shown any grounds for equitable relief, and judgment will therefore be rendered in favor of the defendants, dismissing the complaint upon the merits, with costs, and with an allowance of $300 to the defendants.

Complaint dismissed, with costs.